UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        CASE NO. 06-CR-20062

   Plaintiff,        HON. LAWRENCE P. ZATKOFF

v.

D-2 JESSE CRUZ,
D-3 AUTUMN RIDGE HOME
HEALTH CARE,

   Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 24, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' July 13, 2006, motion to dismiss counts II, III, VI and VII. The Government has responded, and Defendants have replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion to dismiss is DENIED.

**II. BACKGROUND**

In the fall of 2000, Defendant Cruz began the process of having Defendant Autumn Ridge Home Health Care certified as a Medicare provider. Linda Ryan is the owner of a consulting

company that assists Medicare provider applicants with compliance with federal civil rights regulations. The government alleges that Cruz contacted Ryan regarding Autumn Ridge's Medicare provider application, but decided not to retain her services. The government alleges that Cruz falsely stated in the Medicare provider application that Ryan had reviewed Autumn Ridge's policies to ensure that they were not discriminatory.

The application in question was submitted by Cruz on January 29, 2001, to the Michigan Department of Consumer & Industry Services ("MDCIS"). MDCIS received the application on February 2, 2001, and subsequently sent it to Medicare. The parties do not specify when Medicare received the application.

In April 2003, agents from the Department of Health and Human Services interviewed Cruz regarding the application. The government alleges that during the interview Cruz repeated the false statements that he had made in the application regarding Ryan. On January 31, 2006, the government filed the instant indictment.

## III. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A pretrial motion to dismiss "is 'capable of determination' before trial if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Pretrial motions may involve such issues as "former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction." *Id.* (quoting *United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)). "District courts may ordinarily make preliminary findings of fact necessary to decide questions of

law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Id.*

## IV. ANALYSIS

Defendants seek to have counts II, III, VI, and VII dismissed. Counts II and III charge Defendants with making false statements in the Medicare provider application, in violation of 18 U.S.C. §§ 1001 and 1035. Counts VI and VII charge Defendants with making false statements during the April 2003 interview, also in violation of 18 U.S.C. §§ 1001 and 1035.

The government argues that Defendants' motion was filed 128 days after the deadline for filing pretrial motions, and should be denied as untimely. The Court agrees that Defendants' motion is egregiously untimely. However, the Court notes that the defenses raised in Defendants' motion would not be considered waived if not raised in a pretrial motion. *See United States v. Bucheit*, 134 Fed. Appx. 842, 848 (6th Cir. 2005) (A statute of limitations defense "can be raised for the first time on appeal and may be relinquished only upon an explicit, knowing, and voluntary waiver."). Thus, the Court finds that it would be in the interests of judicial economy to deal with these issues now rather than during, or after, trial.

**A.     Counts II and III**

Defendants argue that counts II and III are barred by the statute of limitations. Defendants note that the application with the alleged false statements was mailed to MDCIS on January 29, 2001. MDCIS received the application on February 2, 2001, and subsequently sent it to Medicare. Defendant argues that the five-year statute of limitations began running on January 29, 2001, and thus had expired when the indictment was filed on January 31, 2006. The government argues that the statute of limitations did not begin running until sometime after February 2, 2001, when

Medicare received the application.

Defendants rely primarily on *United States v. Smith*, 740 F.2d 734 (9th Cir. 1984). The defendant in *Smith* was a researcher who prepared a report on an experimental drug. The defendant submitted the report to the Sterling-Winthrop pharmaceutical company. Sterling-Winthrop mailed the report to the Food and Drug Administration ("FDA") on April 14, 1978. The FDA received the report on April 20, 1978. The government filed an indictment on April 19, 1983, alleging that the defendant had made false statements in the report.

The government argued that the statute of limitations began running when the FDA received the report on April 20, 1978. However, the Ninth Circuit held that the offense was complete when the false statement was submitted to the government. *Id.* at 736. Thus, because Sterling-Winthrop had mailed the report on April 14, 1978, the statute of limitations had expired when the government filed the indictment on April 19, 1983.

The Sixth Circuit cited *Smith* in *United States v. Lutz*, 154 F.3d 581 (6th Cir 1998). The defendant in *Lutz* was a mortgage broker authorized to originate Housing and Urban Development ("HUD") loans. HUD policies required the loan originator to meet with the borrower face to face. The loan package would then be submitted to a lending institution for underwriting. If the lending institution determined the borrower was qualified, the loan package was returned to the originator, who submitted it to HUD.

The defendant was charged with falsely representing that she had conducted the face to face interviews with the borrowers. The defendant argued that the statute of limitations began when she submitted the loan packages to the lending institution. The Sixth Circuit noted that the statute of limitations begins when the crime is complete, and the *Smith* court held that the offense is complete

when the statement is submitted. *Id.* at 586. However, the Sixth Circuit held that:

> [N]o offense has occurred under the statute unless a false statement is made regarding a matter within the jurisdiction of a federal agency. A matter is within the jurisdiction of a federal agency for purposes of § 1001 when the agency has the power to exercise authority in a particular situation. At the time Lutz submitted the forms to the lending institution certifying that she had held face-to-face interviews, HUD did not yet have jurisdiction because the final loan application package had not yet been submitted to it. Furthermore, HUD had no authority over the lending institution at this point with regard to whether or not the institution would accept the loan. Therefore, the matter was not within HUD's jurisdiction, and thus the crime was not complete. Because all of the final loan packages were submitted to HUD after June 11, 1991, Lutz's indictment was not barred by the statute of limitations.

*Id.* at 586-87 (citations omitted).

The government argues that the Sixth Circuit has rejected the Ninth Circuit's "mailing" standard and adopted a "receipt" standard, i.e. the statute of limitations does not begin to run when the statement is submitted, but when it is received by the government agency. However, the Sixth Circuit neither explicitly rejected *Smith* nor stated that the statute of limitations only began running when the statements were received by the federal agency. The *Lutz* court merely held that submitting the statements to the lending institution did not start the statute of limitations, because the loans were not then in HUD's jurisdiction.

The *Lutz* ruling may be capable of a broader interpretation; however, the Court need not decide that question at this time. Defendants argue that the statute of limitations began running when the Medicare provider application was mailed to MDCIS on January 29, 2001. However, Defendants have not shown that mailing the application to MDCIS, a state agency, was sufficient to bring the application within the jurisdiction of a federal agency. Defendants note that the Secretary of Health and Human Services has delegated various administrative tasks to state agencies. But Defendants have submitted no evidence indicating that MDCIS has the power to exercise

5

authority over Medicare provider applications.

Furthermore, resolution of that issue would be inappropriate at this time. As noted above, when deciding a 12(b)(2) motion, the Court may only make determinations that do not impinge upon the province of the jury. Making a false statement regarding a matter *within the jurisdiction of a federal agency* is an element of the charged offense. The jury must determine whether Defendants made a false statement regarding a matter within the jurisdiction of a federal agency. Consideration of this question will necessarily entail consideration of when the statement was made. Thus, Defendants' motion to dismiss counts II and III must be denied.

**A.   Counts VI and VII**

Counts VI and VII charge Defendant Cruz with making false statements during his interview with Health and Human Service agents in April 2003. Defendants argue that 18 U.S.C. §§ 1001 and 1035 do not cover "unsworn, oral, false exculpatory responses to questions posed by federal investigators." Defendants rely on the "exculpatory no" doctrine, a judicially-crafted exception to §§ 1001 and 1035, based in part on fifth amendment concerns, first recognized by the Fifth Circuit in *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962).

While the Sixth Circuit had not categorically rejected the "exculpatory no" doctrine, it has never applied it, and has evinced skepticism of the rationale behind the doctrine. In *United States v. Steele*, 933 F.2d 1313 (6th Cir 1991)(en banc), the Sixth Circuit noted that:

> An individual has a constitutional privilege against self-incrimination, but he has no constitutional right to give an untruthful statement. The Hobson's choice posited by some courts applying this exception is flawed; an individual need not assist an investigating officer or face felony charges. A third option is available to an individual: remain silent and invoke the fifth amendment privilege against self-incrimination, or here, simply not mail the documents. While we acknowledge

> the canon of construction that allows a court to construe a statute so as to avoid a constitutional infirmity, a statute that comes "uncomfortably close" to a constitutional violation does not trigger the application of this canon.

*Id.* at 1320.

The Sixth Circuit again considered the "exculpatory no" doctrine in *United States v. LeMaster*, 54 F.3d 1224 (6th Cir. 1995). The defendant was formerly a Kentucky state legislator, who was investigated by the FBI regarding bribes he allegedly received. During an interview, the defendant was asked whether he received cash from a third party. The defendant argued that the "exculpatory no" doctrine should apply because his false statement merely consisted of "no sir." *Id.* at 1229. The Sixth Circuit noted that the defendant made other statements, that while not false in and of themselves, represented "an attempt to conceal additional information required to provide a complete, accurate, and truthful response." *Id.* at 1230. The Sixth Circuit held that the "exculpatory no" doctrine could not be applied to those facts.

*LeMaster* forecloses the possibility of applying the "exculpatory no" doctrine to the instant case. According to the government's allegations, Defendant Cruz did not merely say "no" in response to the agents' questions, he affirmatively made false statements regarding his hiring of Ryan to assist with the Medicare provider application. Defendant Cruz's alleged conduct is less conducive to the application of the "exculpatory no" doctrine than that of the defendant in *LeMaster*. Therefore, the Court must deny Defendants' motion to dismiss counts VI and VII.

## V. CONCLUSION

For the above reasons, Defendants' motion to dismiss counts II, III, VI, and VII is HEREBY DENIED.

IT IS SO ORDERED.

                                              s/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated: August 24, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 24, 2006.

                                              s/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290